UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| METROPOLITAN LIFE INSURANCE COMPANY, | Case No.5:20-cv-02095 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Carmen E. Henderson |
| ALBERT WADE, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Metropolitan Life Insurance Company filed this interpleader action against Albert Wade, Shaun Brown, and Express Funeral Funding, LLC, asking the Court to determine the lawful beneficiary of the ERISA-regulated life insurance plan of Jerome Brown, who is deceased, because MetLife is unable to determine whether a previous change in the named beneficiary under the plan was the result of fraud. The Court previously granted MetLife's motion for default judgment as to Defendants Wade and Express Funeral Funding, LLC due to their failure to answer or otherwise respond to the complaint. Then, the Court permitted MetLife to deposit the proceeds from the plan into the Court's registry and dismissed it from the action. Therefore, the only matter before the Court is Defendant Brown's motion for summary judgment, which is unopposed. For the reasons that follow, and upon its independent review, the Court **GRANTS** the motion.

## BACKGROUND AND PROCEDURAL HISTORY

According to the complaint, Jerome Brown was an employee of FCA US LLC and a participant in the company's life insurance plan. (ECF No. 1, ¶ 7, PageID #3.) On or about January 10, 2005, Jerome Brown executed a beneficiary designation form naming Christie Brown as the primary beneficiary and Sheri Brown and Shaun Brown as contingent beneficiaries. (*Id.*, ¶ 11, PageID #4.) Christie Brown and Sheri Brown pre-deceased Jerome Brown, making Shaun Brown the sole beneficiary under the 2005 designation. (*Id.*, ¶ 12.)

On or about October 23, 2017, Jerome Brown changed his beneficiary designation, making Albert Wade the sole beneficiary under the plan. (*Id.*, ¶ 13.) The 2017 designation was made via a telephone call in which Jerome Brown and Mr. Wade requested the change. (ECF No. 1-3, PageID #72-82.) During the phone call, Mr. Wade told the representative from MetLife that they could not locate Shaun Brown. (*Id.*, PageID #76.)

Jerome Brown died on March 10, 2019. (ECF No. 1, ¶ 14, PageID #5.) The death certificate states "cardiopulmonary arrest" as Jerome Brown's immediate cause of death and "end stage dementia" as his underlying cause of death. (ECF No. 1-1, PageID #84.) The death certificate indicates that Jerome Brown suffered from "end stage dementia" for greater than six months preceding his death. (*Id.*)

On or about March 12, 2019, Shaun Brown called MetLife to inquire whether he was still a named beneficiary. (ECF No. 1, ¶ 16, PageID #5.) Upon learning that he was no longer a named beneficiary, Shaun Brown advised MetLife that the 2017 designation naming Mr. Wade as beneficiary was "forged." (*Id.*)

On or about March 16, 2019, Mr. Wade signed an irrevocable assignment and power of attorney giving Express Funeral Funding, LLC an interest in the plan in the amount of $4,338.12. (*Id.*, ¶ 17.) On the same day, Mr. Wade submitted a life insurance claim to MetLife. (*Id.*, ¶ 18.) Because it could not determine whether the 2017 designation was fraudulent or whether Jerome Brown was mentally competent to make the 2017 designation, MetLife notified both Mr. Wade and Shaun Brown that their claims were adverse to one another and gave the parties an opportunity to resolve the matter short of litigation. (*Id.*, ¶¶ 19-21.)

Because the parties did not reach an agreement as to the lawful beneficiary under the plan, MetLife filed its complaint on September 17, 2020, asking the Court to make this determination. In its complaint, MetLife named Albert Wade, Shaun Brown, and Express Funeral Funding, LLC as defendants.

After service of all parties, the Court held a case management conference on February 10, 2021 and ordered that all motions in this matter be filed no later than March 15, 2021. On March 5, 2021, the Court granted MetLife's motions for default judgment against Express Funeral Funding, LLC (ECF No. 14) and Albert Wade (ECF No. 21) pursuant to Rule 55 because they failed to answer or otherwise respond to the complaint. (ECF No. 22.) On April 6, 2021, the Court granted MetLife's motion to deposit the interpleader funds into the Court's registry in the sun of $24,114.00 plus any applicable interest and ordered that, upon deposit of the funds, MetLife would be dismissed from the case with prejudice. (ECF No. 23, PageID #157–58.)

On April 19, 2021, Defendant Brown moved for an extension of the motion deadline until May 10, 2021. (ECF No. 24.) On April 28, 2021, the Court received a deposit from MetLife into the Court's registry in the amount of $29,528.75. Defendant Brown moved for summary judgment on May 17, 2021 (ECF No. 25), which is unopposed.

## FINDINGS OF RELEVANT FACTS

Although Defendant Brown's motion for summary judgment is unopposed and Defendants Wade and Express Funeral Funding failed to answer or otherwise respond to the complaint, the Court nevertheless conducted a thorough review of the pleadings, motions, and record to determine whether a genuine issue of material fact exists, as it is required to do under Rule 56. *FTC v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Having done so, the Court makes the following findings of fact:

Defendant Shaun Brown is the son of Jerome Brown. (ECF No. 25-1, ¶ 3, PageID #167.) Shaun Brown was the original beneficiary of his father's life insurance policy. (*Id.*, ¶ 4.) At some point before his death in 2019, Jerome Brown developed dementia. (*Id.*, ¶ 5.) On August 17, 2018, the Probate Court of Summit County, Ohio appointed a guardian for Jerome Brown after finding him to be incompetent. (*Id.*, PageID #169.)

Shaun Brown swears that his father's dementia began long before he was declared incompetent in 2018. (*Id.*, ¶ 7.) This claim is supported by Jerome Brown's death certificate, which states that he suffered from "end stage dementia" greater than six months before his death. (ECF No. 1-1, PageID #84.)

4

Further, based on Shaun Brown's personal interactions and observations with his father in 2017, Shaun Brown swears that his father lacked the capacity to make the change naming Mr. Wade as his beneficiary. (*Id.*, ¶ 12, PageID #168.) Shaun Brown also states in his affidavit that Mr. Wade's statement to MetLife that Shaun Brown could not be located was false. (*Id.*, ¶ 10.) Shaun Brown claims Mr. Wade kept him from seeing his father and "manipulated" Jerome Brown into making the change of beneficiary. (Id. ¶¶ 9, 11.) No other party has presented any evidence to contradict any of Shaun Brown's claims.

## ANALYSIS

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the Court must view evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the non-moving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v.*

5

*MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). "The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986)). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not appropriate. *Tokmenko*, 488 F. Supp. 3d at 576 (citing *Anderson*, 477 U.S. at 250). However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id.* The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48).

6

## I. Procedural Issue

At the outset, the Court addresses one procedural issue. Previously, the Court previously set a March 15, 2021 deadline for all motions. Then, the Court granted Mr. Brown an extension until May 10, 2021 to file a dispositive motion, but Mr. Brown filed his motion for summary judgment on May 17, 2021, after the Court's deadline for filing expired. Therefore, Mr. Brown's motion is untimely unless the Court finds his failure to file timely was due to excusable neglect. Fed. R. Civ. P. 6(b)(1)(B).

In *Pioneer Investment Services v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 388 (1993), the Supreme Court adopted a definition of excusable neglect as requiring carelessness. In doing so, it did not use a concept of events beyond one's control. *Id.* "Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392. Further, the Supreme Court recognized that, at least in some circumstances, the term may extend to negligence. *Id.* at 394. What excusable neglect does *not* countenance is a refusal to penalize a client for the oversight of his counsel. *Id.* at 396–97.

During a status conference, Mr. Brown's counsel represented to the Court that she had taken a new position as the public defender for Summit County, Ohio and was making every effort to wrap up her practice. Because of this circumstance, the Court finds that the untimely filing constitutes excusable neglect within the meaning of Rule 6.

## II. Summary Judgment

Based on the Court's factual findings, there are no genuine issues of material fact regarding the rightful beneficiary under Jerome Brown's life insurance policy. Shaun Brown was and remains the sole beneficiary. Therefore, the Court determines that Shaun Brown is entitled to judgment as a matter of law. Accordingly, Shaun Brown is entitled to receive the balance of the amount MetLife deposited into the Court's registry in this matter.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Shaun Brown's motion for summary judgment and finds that he is entitled to receive the balance of the funds MetLife deposited into the Court's registry in this matter. The Court **ORDERS** the counsel for Mr. Brown to file a notice with instructions for payment of the funds in the registry in this case or otherwise to provide them to the Court, including the address and tax identification number of the recipient.

Further, the Clerk is hereby authorized and directed to withdraw the twenty-four thousand one hundred fourteen dollars ($24,114.00) principal plus interest accrued less a fee of an annualized 20 basis points on assets on deposit for funds held in the Disputed Ownership Fund for the management of investments in the Court Registry Investment System. According to the Court's Miscellaneous Fee Schedule, the CRIS fee is assessed from interest earnings to the pool before a pro rata distribution of earnings is made to court cases. The Clerk will disburse the remaining funds to the recipient Defendant identifies pursuant to this Order.

**SO ORDERED.**

8

Dated: June 21, 2021

       J. Philip Calabrese
       United States District Judge
       Northern District of Ohio

9